**STATE of Tennessee**

v.

**Joseph Benjamin COMER IV.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Assigned on Briefs Jan. 30, 2008.

April 21, 2008.

**759**

Joe H. Walker, District Public Defender; and Walter B. Johnson, Assistant District Public Defender, for the appellant, Joseph Benjamin Comer IV.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Russell Johnson, District Attorney General; and Frank Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA McGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

The defendant appeals from the Loudon County Criminal Court's order of restitution following his guilty plea to a charge of reckless endangerment. On appeal, the defendant argues the amount of restitution was unreasonable and excessive. Because the restitution hearing did not result in a final judgment, we dismiss the appeal.

On December 8, 2003, the defendant was indicted on one count of reckless endangerment with a deadly weapon, a Class E felony. *See* T.C.A. § 39–13–103 (2003). On May 4, 2006, he pleaded guilty to the lesser charge of reckless endangerment, a Class A misdemeanor. *Id.* Pursuant to a plea agreement, the defendant received a sentence of 11 months and 29 days, suspended to unsupervised probation, and agreed to pay an amount of restitution to be determined by the trial court at a later hearing or by agreement of the parties. The defendant specifically waived jury determination of the amount of restitution.

A restitution hearing was held in Loudon County Criminal Court on February 5, 2007. At that hearing, Ginger Wilson testified that the defendant fired three bullets into her 1992 Oakwood mobile home. The bullets left "2 huge holes and one dent" in the mobile home, damaging the wallpaper and sheetrock. Ms. Wilson testified that as a result of the damage, the entire mobile home needed to be re-sided. An estimate for the repair in the amount of $12,995 was entered into evidence.

On cross examination Ms. Wilson admitted to receiving a subpoena to bring in additional documents to substantiate her claim, but she testified that she had no such documentation. She testified that she paid "about $24,000" for the mobile home originally, a price that included some furniture. She did not know where the title to the mobile home was. The defense then entered into evidence a 2005 tax appraisal for the entire mobile home in the amount of $14,733.

The defense called no witnesses.

The trial court ordered the defendant to pay $12,995 in restitution to Ms. Wilson, with the payment schedule to be set by the trial court "upon completion of Appeal Process."

The defendant filed a timely appeal, alleging that the trial court imposed an unreasonable and excessive amount of restitution.

■ When a defendant challenges the validity and amount of restitution, this Court must normally conduct a de novo review of both the amount of restitution ordered and the method by which it was determined. *State v. Johnson,* 968 S.W.2d 883, 884 (Tenn.Crim.App.1997) (citing T.C.A. § 40–35–401(d) (1990)); *State v. Frank Stewart,* No. 01–C–01–9007–CC–00161, 1991 WL 8520 (Tenn.Crim.App., Nashville, Jan. 31, 1991). The trial court is entitled to a presumption of correctness. *Johnson,* 968 S.W.2d at 884 (citing T.C.A. § 40–35–401(d)).

■ "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." *Johnson,* 968 S.W.2d at 885. The standards set forth in Tennessee Code Annotated section 40–35–304, which governs restitution in conjunction with probation, indicate that the amount of restitution should be based on a victim's pecuniary loss. *See* T.C.A.

§ 40–35–304(b). "Whenever the court believes that restitution may be proper … the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." *Id.* "Pecuniary loss" is defined as follows:

(1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

(2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

*Id.* at (e).

■ The conviction judgment, entered March 1, 2007, incorporated by reference a "separate order" for restitution. As such, it referred to the order entered February 21, 2007, that established restitution in the amount of $12,995. The judgment provided that the "[s]entence and payment of costs and restitution are stayed pending appeal"; however, the February 21 order provided, "Payment Schedule shall be set by the Court upon completion of Appeal Process." Thus, by the terms of the restitution order that was incorporated into the subsequent judgment, the order for paying restitution was functionally incomplete and was necessarily interlocutory in nature.

■ "[T]he Rules of Appellate Procedure require us to determine whether we have jurisdiction in every case on appeal." *State v. Terry Lynn Byington,* No. E2006–02069–CCA–R3–CD, slip op. at 2, 2007 WL 4167893 (Tenn.Crim.App., Knoxville, Nov. 26, 2007) (citing Tenn. R.App. P. 13(b)). The present case comes to this court as a Tennessee Rule of Appellate Procedure 3(b) appeal as of right. The convicted

defendant in a criminal case has a right to appeal when the trial court has entered a "final judgment of conviction." *Id.; see also Hollis G. Williiams v. State,* No. W2006–00779–CCA–MR3–PC, slip op. at 5, 2007 WL 1711717 (Tenn.Crim.App., Jackson, June 13, 2007) ("Rule 3(b) of the Tennessee Rules of Appellate Procedure governs appeals from final judgments in criminal cases . . ."), *perm. app. denied* (Tenn.2007); *Hanson L. Davis v. State,* No. 02C01–9804–CC–00104, slip op. at 3, 1998 WL 726533 (Tenn.Crim.App., Jackson, Oct. 16, 1998) ("An appeal as of right by a criminal defendant only lies from a final judgment entered by the trial court.") (order). "Under our rules of appellate procedure, Rule 3 appeals (those taken as a matter of right from the trial court to this court) may be taken only from final judgments." *State v. Maddox,* 603 S.W.2d 740, 741 (Tenn.Crim.App.1980). Of course, the requirement of a *final* criminal conviction judgment emanates from Tennessee Code Annotated section 16–5–108 as much as it does from Rule of Appellate Procedure 3(b). Code section 16–5–108(a)(1), in delineating the jurisdiction of the court of criminal appeals, provides, "The jurisdiction of the court of criminal appeals shall be appellate only, and shall extend to review of the *final* judgments of trial courts in . . . [c]riminal cases, both felony and misdemeanor." T.C.A. § 16–5–108(a)(1) (1994) (emphasis added).

■ A judgment is final "when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." *Richardson v. Tennessee Bd. of Dentistry,* 913 S.W.2d 446, 460 (Tenn.1995). "In other words," this court has said, "a judgment is final if it decides the controversy between the parties on the merits and fixes their rights so that, if the judgment is affirmed, nothing remains for the trial court to do but to

proceed with its execution." *Hanson L. Davis,* slip op. at 3 (order). This court has disdained "piecemeal appeals," *Maddox,* S.W.2d at 741, and has commented, "We know of no legal authority for the trial judge's attempt to retain jurisdiction over [a] question, while at the same time granting an appeal on the other matters . . . ." *Id.* at 740–41; *see State v. Bonhart,* 223 Tenn. 582, 590–91, 448 S.W.2d 669, 672–73 (Tenn.1969) (characterizing as "fundamental and well-settled" the rule "that there is no right of appeal from an interlocutory order or judgment in criminal cases").

In the present case, the trial court apparently intended to further adjudicate the particulars of the payment of restitution after this court adjudicated the propriety of the amount of restitution. Were we to adjudicate the merits of the appeal and remand the case, something more than execution of the judgment remains to be done. Thus, the judgment that incorporated the provision for post-appeal deferral of payment terms was not final and cannot support a Rule 3, rightful appeal. Moreover, no application for an interlocutory appeal was filed, *see* Tenn. R.App. P. 9, 10, and frankly, we see no basis for an interlocutory appeal being granted had such been prayed for.

■ Furthermore, in the present case, the absence of a restitution payment methodology would likely preclude us from reviewing the case had we the jurisdiction to do so. In a restitution case, the sentencing court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay. T.C.A. § 40–35–304(d); *State v. Bottoms,* 87 S.W.3d 95, 108 (Tenn.Crim. App.2001). In ordering restitution, the trial court shall specify the amount of time and payment and may permit payment or performance of restitution in installments. T.C.A. § 40–35–304(c). The court may

not, however, establish a payment or schedule extending beyond the expiration of the sentence. *Id.* at (g)(2). We recognize that a defendant's ability to pay may be determined as much by the terms of payment as by the total amount of restitution; yet, in the present case, the terms have yet to be established.

Furthermore, the trial court has not addressed, at least on the record, the financial resources of the defendant or his future ability to pay as directed by the statute. Apparently, that issue was reserved for post-appeal disposition.

In light of the foregoing, the appeal is dismissed.